UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETER J. MCDANIELS,

          Plaintiff,

   v.

BELINDA STEWART et al.,

          Defendants.

CASE NO. 3:15-CV-05943-BHS-DWC

ORDER TO SHOW CAUSE OR AMEND

Plaintiff Peter J. McDaniels, proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983. Having reviewed and screened the Complaint under 28 U.S.C. § 1915A, the Court declines to serve the Complaint but provides Plaintiff leave to file an amended pleading by March 8, 2016, to cure the deficiencies identified herein.

### I.    BACKGROUND

Plaintiff, who is currently incarcerated at Stafford Creek Corrections Center (SCCC) alleges his rights have been violated because the Halal diet he has been provided is inadequate. Dkt. 9.

ORDER TO SHOW CAUSE OR AMEND - 1

Plaintiff alleges he has been practicing the Muslim religion since 1999 and his religion prescribes a Halal diet. Dkt. 9 at 6. Plaintiff alleges Correctional Industries (CI)[1] took over the SCCC food menu and since then, the Halal diet has been inadequate. *Id.* Specifically, plaintiff alleges the Halal diet is high in sodium and sugar, nutritionally deficient; inconsistent; deceptive; lacks whole foods; not certified Halal; rancid; and contains preservatives, chemicals and products Plaintiff is allergic to including textured vegetable protein (TVP), soy and food dyes. *Id.* at 6. Plaintiff alleges he was poisoned during Ramadan with a rotten hot dog, which made Plaintiff hallucinate. *Id.*

Plaintiff alleges sometime after Ramadan he went off the Halal diet and went on the vegan diet but the TVP levels were higher in the vegan diet. *Id.* at 9. Plaintiff alleges he was able to buy commissary items and trade them for Halal meats and tuna. *Id.* at 9-10. While on the vegan diet, Plaintiff alleges he was deprived of all of the same things as the Halal diet including fresh vegetables. *Id.* Plaintiff alleges he was denied milk for several months. *Id.* Plaintiff alleges the vegan meals are not nutritionally adequate and have an unbalanced calorie to carbohydrate ratio. *Id.* at 11.

It appears Plaintiff eventually tried to go back on the Halal diet in November 2014, however, he missed the deadline to apply for a diet change. *Id.* at 16-17. Plaintiff alleges he was forced to beg for food until he was able to buy his own food. *Id.* at 18. In July 2015, Plaintiff alleges he was able to get back on the Halal diet. *Id.* at 18. The Complaint is not clear but it appears Plaintiff alleges at some point he went off the Halal diet again. *Id.* at 20.

---

[1] Although the Complaint is not clear, it appears "CI" refers to the Washington State Correctional Industries, which is a division of the Washington State Department of Corrections. CI operates businesses within prison facilities providing food and food processing services. *See http://www.washingtonci.com/about-ci.html.*

1      Plaintiff alleges defendants have violated his due process, First Amendment, Religious

2 Land Use and Institutionalized Persons Act (RLUIPA), Fourteenth Amendment, and Eighth

3 Amendment rights. *Id.* at 22. Plaintiff also alleges state law claims under the Washington

4 Constitution and, negligence and contract law. *Id.* at 22-23.

5      Plaintiff seeks compensatory damages and $27 million in punitive damages. *Id.* at 29.

6                              **II.   DISCUSSION**

7      Under the Prison Litigation Reform Act of 1995, the Court is required to screen

8 complaints brought by prisoners seeking relief against a governmental entity or officer or

9 employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the

10 complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to

11 state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant

12 who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*,

13 152 F.3d 1193 (9th Cir. 1998).

14      In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

15 suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

16 the violation was proximately caused by a person acting under color of state law. *See Crumpton*

17 *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

18 identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

19 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

20 named defendants caused, or personally participated in causing, the harm alleged in the

21 complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

22      The Complaint suffers from deficiencies which require the Court to dismiss the

23 Complaint if not corrected in an amended complaint.

24

A. **Personal Participation**

As an initial matter, the Court finds the Complaint is deficient with respect to all his claims because Plaintiff has failed to allege personal participation of the named Defendants. Plaintiff has named over forty Defendants in this cause of action. *See* Dkt. 9. The only Defendants Plaintiff references in the text of his Complaint are Defendant Roberts, (Dkt. 9 at 21), Defendant Pat Doe (*id.*), Defendant Williamson (*id.* at 7), and Defendant Sendawula (*id.* at 17). The deficiencies against these four defendants are discussed below, with respect to each specific claim, *see infra*.

With respect to the remaining thirty-six Defendants, Plaintiff generally alleges these Defendants violated DOC policies and denied his grievances. Dkt. 9 at 27-29. However, in order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. Dept. of Soc. Serv. Of New York*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965, 967 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id*. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). A plaintiff can prove causation under § 1983 only if plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he

1 was legally required to do that caused the deprivation complained of. *Arnold,* 637 F.2d at 1355
2 (*quoting Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir. 1978)).

3  Even construing the Complaint liberally, Plaintiff has failed to sufficient facts to support a claim against these thirty-six Defendants. Plaintiff does not allege how any of these Defendants were involved in any of the alleged constitutional violations or how these Defendants violated his rights in any way. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (finding a plaintiff must show how a defendant caused or personally participated in causing the harm alleged in the complaint).

9  Although Plaintiff has generally alleged Defendants have denied his grievances, there is no constitutionally protected right to a specific grievance procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988)). Because there is no right to any particular grievance process, it is impossible for Plaintiff's constitutional rights to have been violated by ignoring or failing to properly process grievances.

14  Thus, the Court finds Plaintiff has failed to allege personal participation. In order to proceed with any claims against the named Defendants, Plaintiff must include factual allegations relating to his claims and specifically identify how each person violated his constitutional rights.

17  **B.    Violation of DOC Policies**

18  Although the Complaint alleges Defendants violated DOC policies, state policies and regulations are "not designed to confer rights on inmates," but are instead "primarily designed to guide correctional officials in the administration of a prison." *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995). While "[p]rison regulations governing the conduct of correctional officers" are "relevant in determining whether an inmate's right was clearly established," they do not confer rights. *Furnace v. Sullivan,* 705 F.3d 1021, 1027 (9th Cir. 2013) (citations and internal quotation

marks omitted); *see also Parra v. PacifiCare of Arizona, Inc.,* 715 F.3d 1146, 1154 (9th Cir. 2013) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it *may not create a right* that Congress has not.") (emphasis added; citation and internal quotation marks omitted). Thus, Plaintiff has no separate legal claim for Defendants' alleged violations of DOC policies. However, Plaintiff's claims for violation of DOC policies are addressed with respect to his rights under the First and Eighth Amendments and RLUIPA, *see infra.*

### C. General Due Process

Plaintiff generally alleges his due process rights have been violated. Dkt. 9 at 23. However, Plaintiff does not provide the Court with any facts showing how his due process rights were violated. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Plaintiff's allegations of due process violations are properly analyzed in relation to his Eighth Amendment claim, *see infra*. *See also Graham v. Connor,* 490 U.S. 386, 395 (1989) (where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").

### D. Fourth Amendment

Plaintiff alleges his Fourth Amendment rights have been violated because Plaintiff was compelled to purchase food with his own money, which constitutes unreasonable seizure. Dkt. 9 at 23.The Fourth Amendment prohibits unreasonable searches and seizures. *Bell v. Wolfish,* 441 U.S. 520, 558 (1979); *Byrd v. Maricopa Cnty. Sheriff's Dep't,* 629 F.3d 1135, 1140 (9th Cir. 2011), *cert. denied,* 131 S.Ct. 2964 (2011); *Michenfelder v. Sumner,* 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which requires a balancing

of the need for the particular search against the invasion of personal rights the search entails. *Bell,* 441 U.S. at 558–59; *Byrd,* 629 F.3d at 1141; *Bull v. City and Cnty. of San Francisco,* 595 F.3d 964, 974–75 (9th Cir. 2010); *Nunez v. Duncan,* 591 F.3d 1217, 1227 (9th Cir. 2010); *Michenfelder,* 860 F.2d at 332–34. Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell,* 441 U.S. at 559; *Byrd,* 629 F.3d at 1141; *Bull,* 595 F.3d at 972; *Nunez,* 591 F.3d at 1227; *Michenfelder,* 860 F.2d at 332.

Plaintiff fails to state a claim against any Defendants. Plaintiff has also not alleged he was unreasonably searched or that a particular Defendant seized his property in any way. Instead, Plaintiff alleges he voluntarily purchased food from the commissary because he chose not to accept the food he was provided. Plaintiff must show cause why his Fourth Amendment claim should not be dismissed.

E.  **First Amendment and RLUIPA**

Plaintiff alleges he is a Muslim and the Halal meals provided are nutritionally inadequate. *See* Dkt. 9. Plaintiff alleges the Halal meals are a "major roadblock, spiritually, socially, physically." *Id.* at 8.

In order to establish a First Amendment violation, Plaintiff "must show that [defendant] burdened the practice of [his] religion, by preventing [him] from engaging in conduct mandated by [his] faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) (footnote omitted)). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious

doctrine.'" *Freeman*, 125 F.3d at 737 (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). A prison official's negligent or accidental interference with an inmate's ability to exercise his religious beliefs does not state any claim actionable under § 1983. *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006). RLUIPA prohibits prison officials from substantially burdening a prisoner's " 'religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.' " *Alvarez v. Hill,* 518 F.3d 1152, 1156 (9th Cir. 2009) (*quoting Warsoldier v. Woodford,* 418 F.3d 989, 997–98 (9th Cir. 2005)). *See* 42 U.S.C. § 2000cc-1(a).

While Plaintiff alleges he was not able to get back on the Halal diet because he missed the deadline to submit his paperwork and Defendant Sendawula, the chaplain, informed Plaintiff the policy for religious diets was changing, *see* Dkt. 9 at 17, the Complaint does not allege he was ever denied a properly requested Halal meal. Thus, the Court understands Plaintiff complains Defendants have interfered with the practice of his religion by providing him a nutritionally inadequate Halal meal. However, he has not alleged the failure to provide a nutritionally adequate Halal meal constitutes " 'an interference with a tenet or belief that is central to his religious doctrine.' " *Freeman,* 125 F.3d at 737. Plaintiff has not alleged his religion requires the consumption of nutritionally adequate meals that do not include TVP, chemicals or soy, only that his dietary and health preference is to have a religiously permissible Halal diet, which includes meat. *See Sefeldeen v. Alameida,* 238 F.App'x. 204 (9th Cir. 2007) (affirming summary judgment for defendant prison officials against free exercise and RLUIPA claims; plaintiff "identifies no evidence in the record suggesting that eating the offered vegetarian meal plan violated any principles of his personal religious belief").

Accordingly, the Court finds Plaintiff has failed to state a claim under the First Amendment and RLUIPA. If Plaintiff wishes to pursue these claims, he must provide an amended complaint with a short, plain statement explaining exactly what actions were taken by an individual Defendant, how each Defendant's actions violated plaintiff's constitutional rights, and how the inadequate Halal meals constituted an interference with his religion.

### F. Eighth Amendment

Plaintiff alleges he suffered as a result of the vegan and Halal meals with such suffering including: bloating, flatulence, painful rejection of TVP, painful transformation of his breasts, sore nipples, "poofy" body making him look pregnant, severe abdominal pain, memory loss, recognition issues, feeling "Greenie," sleep issues, increased emotions, depression, increased left breast size, knee problems, difficulty concentrating, emotional issues, high cholesterol, excessive dry skin, body aches, headaches, sore fingernails, dirty sweat, and constipation. Dkt. 9 at 8-9, 11-13. Plaintiff alleges he was poisoned during Ramadan with a rotten hot dog, which made Plaintiff hallucinate. *Id.* at 9.

Plaintiff alleges he was refused sick call because he did not have the flu or a cold. *Id.* at 8-9. However, Plaintiff alleges he has been prescribed a therapeutic diet to combat the toxic levels of sodium and sugar and he was prescribed Simvastatin for his cholesterol and docusate sodium to reduce his symptoms. *Id.* at 7, 8, 12. Plaintiff alleges he has attempted to get approval for a TVP-free Halal diet but the Care Review Committee (CRC) has refused his requests. *Id.* Plaintiff alleges an x-ray was taken related to severe abdominal pain and the medical providers concluded Plaintiff should "watch" what he eats. *Id.* at 11. In another portion of the Complaint, Plaintiff alleges the medical unit cut off the H-1 living unit from any services that were not an emergency. *Id.* at 15.

1    Inmates alleging Eighth Amendment violations based on prison conditions must
2 demonstrate prison officials were deliberately indifferent to their health or safety by subjecting
3 them to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wallis*
4 *v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Prison officials display a deliberate indifference
5 to an inmate's well-being when they consciously disregard an excessive risk of harm to the
6 inmate's health or safety. *Farmer*, 511 U.S. at 838-40; *Wallis*, 70 F.3d at 1077. The Eighth
7 Amendment standard requires proof of both an objective and a subjective component. *Hudson v.*
8 *McMillian*, 503 U.S. 1 (1992). If either of these components is not established, the court need
9 not inquire as to the existence of the other. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

10    First, the deprivation alleged must objectively be sufficiently serious, resulting in a denial
11 of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (*quoting*
12 *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In proving the objective component, an inmate
13 must establish there was both some degree of actual or potential injury, and society considers the
14 acts the plaintiff complains of to be so grave that it violates contemporary standards of decency
15 to expose anyone unwillingly to such acts. *Helling*, 509 U.S. at 36; *see also Estelle v. Gamble*,
16 429 U.S. 97, 102 (1976).

17    With regard to food, the courts have concluded, "the Eighth Amendment requires only
18 that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically
19 pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th. Cir.1993) (citation omitted). Only those
20 conditions of confinement which deny a prisoner "the minimal civilized measure of life's
21 necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.*
22 (*quoting Hudson v. McMilliam*, 503 U.S. 1 (1992)). *See, e.g. Foster v. Runnels,* 554 F.3d 807,
23 812–13, 813 n. 2 (9th Cir. 2009) (A prisoner who was denied 16 meals in 23 days, lost weight,
24

1  and suffered headaches and dizziness as a result of inadequate nutrition alleged a sufficiently
2  serious deprivation to implicate the Eighth Amendment.); *Green v. Ferrell*, 801 F.2d 765, 770–
3  71 (5th Cir.1986) (finding two meals a day sufficient if nutritionally and calorically adequate);
4  *see also Sostre v. McGinnis*, 442 F.2d 178, 186, 193–94 (2d Cir. 1971) (finding diets of 2,800 to
5  3,300 calories per day constitutionally adequate), *cert. denied*, 404 U.S. 1049 (1972);
6  *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (finding one meal a day for 15 days,
7  where the meal contained 2,000 to 2,500 calories and was sufficient to maintain health,
8  constitutionally adequate).
9        Second is the subjective component, requiring that the prison official possesses a
10 sufficiently culpable state of mind: "deliberate indifference to inmate health and safety."
11 *Farmer*, 511 U.S. at 834-36.  With regard to deliberate indifference, a prison official is not liable
12 "unless the official knows of and disregards an excessive risk to inmate health or safety; the
13 official must both be aware of facts from which the inference could be drawn that a substantial
14 risk of serious harm exists, and he must also draw the inference." *Id*. at 837.  The subjective
15 component requires proof the official was: (1) aware of the facts which would lead a reasonable
16 person to infer the substantial risk of serious harm; (2) actually made the inference that the
17 substantial risk of serious harm to the plaintiff existed; and (3) knowingly disregarded the risk.
18 *Id*.; *see also Farmer*, 511 U.S. at 844.
19       While Plaintiff alleges he has not been provided with adequate food to maintain his
20 health and he was denied sick call on one occasion, he also alleges he was provided with
21 medication, an x-ray and several visits to the medical unit. Plaintiff has failed to allege how
22 Defendants were deliberately indifferent to Plaintiff's health or safety. Plaintiff does not allege
23 any of the named Defendants knew the ingredients in the vegan and Halal meals were causing
24

ORDER TO SHOW CAUSE OR AMEND - 11

Plaintiff to physically suffer and that Defendants were deliberately indifferent to that risk. *See Farmer,* 511 U.S. at 837. Thus, the Complaint does not show Defendants had subjective knowledge of an inhumane condition of confinement which Plaintiff alleged occurred or Defendants disregarded such a risk.

Accordingly, the Court finds Plaintiff has failed to state a claim under the Eighth Amendment. If Plaintiff wishes to pursue claims under the Eighth Amendment, he must provide an amended complaint with a short, plain statement explaining exactly what actions were taken by an individual Defendant, how each Defendants' actions violated plaintiff's constitutional rights, what harm he suffered as a result, and whether the named Defendant had knowledge of Plaintiff's harm or risk of harm.

G. **Retaliation**

Plaintiff alleges Defendant Williamson told Plaintiff at a grievance appeal meeting, "Olympia deliberately made the meals undesirable for the purpose of compelling the religious inmates to abandon their special diets." Dkt. 9 at 7, 14. Plaintiff also alleges he was refused eyeglasses in retaliation for filing grievances against the medical unit. *Id.* at 9. Plaintiff alleges Defendants Roberts and Doe refused to feed plaintiff and they infracted and sanctioned plaintiff. *Id.* at 21. Plaintiff alleges he received stale bread and a very small dinner as a punishment for desiring to practice his religion's dietary laws. *Id.* at 7.

There are five basic elements for a viable claim of First Amendment retaliation in the prison context. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (*quoting Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2004)). First, the plaintiff must allege the retaliated-against conduct is protected. *Id.* Second, plaintiff must claim a defendant took an adverse action against plaintiff, *Rhodes,* 408 F.3d at 567, but the adverse action does not need to be an independent

constitutional violation. *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action … ." *Brodheim,* 584 F.3d at 1270; *see also Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012). Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. *Brodheim*, 584 F.3d at 1269; *Rhodes*, 408 F.3d at 567. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison,* 668 F.3d at 1114 (*citing Pratt,* 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent") and *Murphy v. Lane,* 833 F.2d 106, 108–09 (7th Cir. 1987)).

Fourth, the plaintiff must allege the defendant's actions chilled the plaintiff's exercise of his First Amendment rights. *Brodheim*, 584 F.3d at 1269. Allegations of harm are sufficient to ground a retaliation claim without discussing whether the harm had a chilling effect. *See Pratt,* 65 F.3d at 807-08; *Watison,* 668 F.3d at 1114; *see also Rhodes,* 408 F.3d at 567-68 n. 11 ("[H]arm that is more than minimal will almost always have a chilling effect."); *Wilson v. Nesbeth*, 341 F. App'x 291, 293 (9th Cir. 2009). Fifth, plaintiff must allege "the action did not reasonably advance a legitimate correctional goal." *Brodheim,* 584 F.3d at 1269. "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution,' " *Watison*, 668 F.3d at 1114-15 (internal citation omitted) (*quoting Franklin v. Murphy,* 745 F.2d 1221, 1230 (9th Cir. 1984)).

Plaintiff alleges several different instances in which Defendants allegedly retaliated against him for his religious beliefs. With respect to the claims against Defendants Roberts and Doe, Plaintiff fails to allege a nexus between the alleged retaliatory action and Plaintiff's

protected conduct, how Defendants' actions chilled his speech or that the alleged retaliatory actions did not reasonably advance a legitimate penological goal. With respect to Plaintiff's allegations against Defendant Williamson, Plaintiff has failed to identify and allege facts showing how Defendant Williamson took any affirmative action or failed to act, causing the alleged retaliation. *Arnold,* 637 F.2d at 1355 (*quoting Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir. 1978)). Regarding Plaintiff's allegations he was denied eyeglasses and given stale bread and a small dinner, he has not alleged any facts showing how the named Defendants personally participated in these alleged retaliatory actions.

Accordingly, the Court finds Plaintiff has failed to state a retaliation claim under the First Amendment. If Plaintiff wishes to pursue a retaliation claim under the First Amendment, he must provide an amended complaint with a short, plain statement explaining exactly what actions were taken by an individual Defendant, how each Defendants' actions violated plaintiff's constitutional rights, facts showing nexus between the alleged retaliatory action and Defendants conduct, how Defendants' actions chilled his speech and that the alleged retaliatory actions did not reasonably advance a legitimate penological goal.

**H.     Equal Protection**

The basis for Plaintiff's equal protection claim is not entirely clear. It appears, however, Plaintiff's claim is related to his allegation that other inmates, not on the Halal diet received different food including "olives, tomatoes, cucumbers, radishes, hearty soups with meat, tossed salads with real dressing, cheddar cheese, fresh onions and salsa, tortillas, banana and zucchini bread etc." Dkt. 9 at 6. Furthermore, Plaintiff alleges Defendant Williamson told him the Halal meals were intentionally undesirable in order to deter Muslim inmates from requesting them. Dkt. 9 at 7.

Generally, "[t]o state a claim under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with intent to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Navarro v. Block,* 72 F.3d 712, 716 n. 5 (9th Cir. 1995) (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)). Some of the evidence that can establish discriminatory intent includes the "historical background of the decision ... particularly if it demonstrates there has been a series of official actions taken for invidious purposes ...." *Id.* at 716 (citation omitted) (internal quotation marks omitted). The mere fact that a facially neutral policy has a "foreseeably disproportionate impact" on a protected group, without more, does not rise to the level of an equal protection violation. *Lee,* 250 F.3d at 687.

While Plaintiff may have sufficiently alleged an intent to discriminate, he has failed to allege any facts describing how any of the named Defendants personally participated in causing the alleged equal protection violation. While Plaintiff alleges Defendant Williamson informed him of the alleged decision or policy, Plaintiff does not allege any of the named Defendants played any part in developing or implementing a discriminatory policy related to the Halal meals.

Accordingly, Plaintiff fails to state an equal protection claim under the Fourteenth Amendment. If Plaintiff wishes to pursue an equal protection claim under the Fourteenth Amendment, he must provide an amended complaint with a short, plain statement explaining

exactly what actions were taken by an individual Defendant and how each Defendant's actions violated plaintiff's constitutional rights.

### I.   DOC/SCCC Grievance Program, DOC/SCCC Religious Program, Labor Organizations, and CI Food Plan Production/Storage as Defendants

Plaintiff names the following DOC and SCCC agencies and divisions as Defendants: DOC/SCCC Grievance Program, DOC/SCCC Religious Program, Labor Organizations, and CI Food Plan Production/Storage. *See* Dkt. 9. A governmental agency that is an arm of the state is not a person for purposes of §1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc). A state's Department of Corrections is an arm of the state for purposes of claims brought under 42 U.S.C. §1983. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (concluding that the suit against the state Board of Corrections was barred by the Eleventh Amendment); *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc) (concluding that the Arizona Department of Corrections was an arm of the state and, thus, not a person for §1983 purposes); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991). Section 1983 claims against states, therefore, are legally frivolous. *See Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (superseded by statute on other grounds as stated in, *Lopez v. Smith*, 203 F.3d 1122, 1130 [9th Cir. 2000] (en banc)).

Plaintiff's claims against SCCC Food Services, DOC/SCCC Religious Program, DOC/SCCC Grievance Program, and CI Food Plant Production Storage are not claims against persons under 42 U.S.C. § 1983. Plaintiff must show cause why his claims against these Defendants should not be dismissed.

### J.   State Law Claims

In addition to his federal § 1983 claim, Plaintiff contends Defendants' conduct violated the Washington Constitution and constitutes negligence and violations of contract law under existing Washington state law. Dkt. 9 at 22-24. The facts and harm alleged by Plaintiff in support of his state law claims his the same as those alleged in support of his federal § 1983 claims.

While the Court does not make a determination on supplemental jurisdiction at this time, Plaintiff is advised a district court's exercise of supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim is a matter of discretion. 28 U.S.C. § 1367(a); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir.1989). Pursuant to 28 U.S.C. § 1367(c)(3), if a federal district court has dismissed all claims over which it has original jurisdiction, it may, in its discretion, dismiss without prejudice supplemental state law claims brought in the same action. Although the Court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, fairness, convenience, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *see also Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). The dismissal of supplemental state law claims may be justified if the case is at an early stage. *Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir. 1991).

### III. Instruction to Plaintiff and the Clerk

Due to the deficiencies described above, if Plaintiff intends to pursue a § 1983 civil rights action in this Court, he must file an amended complaint and within the amended complaint, he must write a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual

1  did or failed to do; (4) how the action or inaction of the individual is connected to the violation
2  of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the
3  individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).

4      Plaintiff shall present the amended complaint on the form provided by the Court. The
5  amended complaint must be legibly rewritten or retyped in its entirety, it should be an original
6  and not a copy, it should contain the same case number, and it may not incorporate any part of
7  the original complaint by reference. The amended complaint will act as a complete substitute for
8  the original Complaint, and not as a supplement.  An amended complaint supersedes the original
9  complaint. *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474 (9th Cir. 1997) *overruled in part on*
10 *other grounds, Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir. 2012).  Therefore, the amended
11 complaint must be complete in itself and all facts and causes of action alleged in the original
12 Complaint that are not alleged in the amended complaint are waived.  *Forsyth,* 114 F.3d at 1474.
13 The Court will screen the amended complaint to determine whether it contains factual allegations
14 linking each Defendant to the alleged violations of Plaintiff's rights. The Court will not authorize
15 service of the amended complaint on any Defendant who is not specifically linked to a violation
16 of Plaintiff's rights.

17     If Plaintiff fails to file a amended complaint or fails to adequately address the issues
18 raised herein on or before March 8, 2016, the undersigned will recommend dismissal of this
19 action as frivolous pursuant to 28 U.S.C. § 1915.

20
21
22
23
24

The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint and for service. The Clerk is further directed to send copies of this Order and Pro Se Instruction Sheet to Plaintiff.

Dated this 8th day of February, 2016

David W. Christel
United States Magistrate Judge