1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10  PETER J. MCDANIELS,

11              Plaintiff,

12      v.

13  BELINDA STEWART, et al.,

14              Defendants.

CASE NO. 3:15-cv-05943-BHS-DWC

REPORT AND
RECOMMENDATION

Noting Date: October 12, 2018

15

16      The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

17  States Magistrate Judge David W. Christel. Plaintiff Peter J. McDaniels, proceeding *pro se*,

18  initiated this civil rights action on December 28, 2015. Dkt. 1.

19      Plaintiff alleges his First Amendment, Eighth Amendment, and Fourteenth Amendment

20  protections were violated when Defendants did not allow Plaintiff to have both a religious and a

21  therapeutic diet plan, when they failed to provide him with a soy-free diet, when they neglected

22  to provide Plaintiff a hearing before declining to provide him a soy-free diet, and when they

23  provided Plaintiff with rotten meat. However, Plaintiff has not shown the policy limiting

24  prisoners to one meal plan was a substantial burden on his religious exercise and not in

1 furtherance of a legitimate penological interest. Further, he has not shown Defendants knew of

2 but failed to act on Plaintiff's soy allergy or the rotten meat he allegedly received. Therefore, the

3 Court recommends Defendants' Motion for Summary Judgment ("Motion"), Dkt. 231, be

4 granted and Plaintiff's action be dismissed with prejudice.

5 **I.    Background**

6 Plaintiff originally filed this action on December 28, 2015. Dkt. 1. Pursuant to an Order

7 from the Court, Dkt. 21, Plaintiff filed an Amended Complaint on February 17, 2016, Dkt. 32.

8 Pursuant to a second Order from the Court, Dkt. 164, Plaintiff filed a Second Amended

9 Complaint, the operative Complaint in this proceeding, on January 13, 2017, Dkt. 165.

10 In Plaintiff's Second Amended Complaint, Plaintiff alleges his First Amendment, Eighth

11 Amendment, and Fourteenth Amendment rights were violated. *Id*. He alleges his freedom to

12 exercise his religion under the First Amendment and the Religious Land Use and

13 Institutionalized Persons Act ("RLUIPA") were violated because Defendants enforced a policy

14 that did not allow him to be on both a religious diet plan and a therapeutic diet plan at the same

15 time. *Id*. He argues this forced him to choose between an unhealthy diet that is in line with his

16 religious beliefs, or a healthy diet that does not adhere to his religious beliefs. *Id*. He further

17 argues his Eighth Amendment protections were violated when Defendants did not place Plaintiff

18 on a soy-free diet because he is allegedly allergic both to soy and textured vegetable protein

19 ("TVP") – ingredients present in some Department of Corrections ("DOC") meals. *Id*. He argues

20 he told Defendants about his soy allergy, but they ignored his complaints and continued to

21 provide him food high in soy and TVP, causing pain and gastrointestinal distress. *Id*. He also

22 argues his Eighth Amendment rights were violated because he received rotten meat with his

23 meals on several occasions. *Id*.

24

1    Plaintiff further argues his Fourteenth Amendment due process rights were violated

2  because he did not receive a hearing before Defendants declined to place him on a soy-free diet.

3  Dkt. 165. In addition, he argues his Fourteenth Amendment equal protection rights were violated

4  because only the halal diet causes gastrointestinal distress, meaning prisoners who adhere to

5  other religious diets are provided preferential treatment as to their meals. *Id*. Plaintiff seeks

6  injunctive relief allowing him to mix diet plans and appears to request that he be placed on a soy-

7  free diet. *Id*.

8    On July 6, 2017, the Court stayed this case because Plaintiff had filed an interlocutory

9  appeal with the Ninth Circuit.[1] Dkt. 219. On April 25, 2018, while the case was still stayed,

10  Defendants filed their Motion. Dkt. 231. They argue enforcing a policy requiring Plaintiff to stay

11  on one diet plan at a time did on violate his rights because they were not prohibiting him from

12  eating in accordance with his religious beliefs and the policy furthers a legitimate penological

13  goal. *Id*. They further argue they were not deliberately indifferent to Plaintiff's alleged soy

14  allergy because there is no evidence Plaintiff has ever been diagnosed with a soy allergy. *Id*.

15  They finally argue plaintiff has not provided evidence to demonstrate that either his due process

16  or equal protection rights have been violated. *Id*.

17    The Court lifted the stay on the case on May 15, 2018, and directed Plaintiff to file a

18  Response to the Motion. Dkt. 240. Plaintiff filed his Response on June 29, 2018, Dkt. 246, and

19  Defendants filed their reply on August 16, 2018, Dkt. 255.

20

21

22

23

24    [1] Plaintiff challenged the District Court's Judge's Order adopting this Court's recommendation and denying Plaintiff's Motion for Preliminary Injunction. Dkt. 180.

## II.    Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (citing *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is

1    "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific*

2    *Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3        Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

4    grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

5    'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477

6    U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

7    longer can it be argued that any disagreement about a material issue of fact precludes the use of

8    summary judgment."). In other words, the purpose of summary judgment "is not to replace

9    conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

10   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

11   support an assertion of fact or fails to properly address another party's assertion of fact as

12   required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

13   materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

14   Fed R. Civ. P. 56(e)(3).

15   **III.    Discussion**

16       Plaintiff includes five "issues" in his Second Amended Complaint. Dkt. 165. However,

17   since each "issue" contains various alleged constitutional violations spanning various

18   constitutional amendments and federal statutes, the Court will analyze Plaintiff's claims based on

19   the alleged constitutional wrong or statutory violation rather than the "issues" as presented by

20   Plaintiff.

21       *A.  Religious Access Claims*

22       Plaintiff argues both that Defendants substantially burdened the practice of his religion

23   under RLUIPA and under the First Amendment.

24

1.   <u>RLUIPA</u>

Plaintiff argues his rights under RLUIPA were violated when Defendants did not allow him to mix multiple diet plans. Under RLUIPA, a plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). "[A] burden is substantial under RLUIPA when the state denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur v. Schriro,* 514 F.3d 878, 888 (9th Cir. 2008). However, "[a] prison's accommodation of religious observances" should not be elevated "over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 710 (2005). To the contrary, "an accommodation must be measured so that it does not override other significant interests." *Id.*

The Court must first identify the "religious exercise" allegedly infringed upon. *Greene v. Solano County Jail,* 513 F.3d 982, 987 (9th Cir. 2008). RLUIPA defines "religious exercise" as *"any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* (citing 42 U.S.C. § 2000cc–5(7)(A)) (emphasis in original).

Plaintiff alleges Defendants have burdened his religious exercise by not allowing him to mix diet plans and thereby properly adhere to a halal diet. He states Defendants will not allow him to be on a soy-free diet and religious diet at the same time, and are therefore forcing him to choose between a healthy diet and a diet that comports with his religious beliefs. Dkt. 165, p. 5. He argues he was denied halal meat when he was on non-halal diet plans and, specifically when he was on a vegan diet, he was denied fresh milk, both of which are food products Plaintiff's faith requires him to consume. *Id.*, pp. 5, 7-8, 25. He also argues the Halal meal has a significant

amount of soy and textured vegetable protein ("TVP"), both of which he is allegedly allergic to. *See id.*, p. 11. He ultimately argues being forced to choose between a healthy non-halal diet and what he considers an unhealthy halal diet is a substantial burden on his religious exercise.

Here, Plaintiff has provided no evidence to show the halal diet is any more or less healthy than any other diet. Defendants have provided evidence that the halal diet provides prisoners with approximately 2800 calories per day. Dkt. 257. Further, it contains approximately 2200 mg of sodium, less than the 2400 mg recommended maximum. Dkt. 232, pp. 3-4. In addition, the Halal diet includes fresh fruits and vegetables, and food products Plaintiff considers unhealthy, such as margarine and sugar, are served separately from the meals, allowing a prisoner to choose not to consume them. *See* Dkt. 147-1.

Plaintiff has also provided no clinical evidence to suggest he is actually allergic to soy and TVP, and thus has not demonstrated Defendants have imposed a substantial burden by forcing Plaintiff to choose between a religious diet he is allergic to and a diet that contains less allergens, but does not comport with Plaintiff's faith. To the contrary, Defendants have provided evidence showing that Plaintiff's healthcare provider observed nothing that would indicate Plaintiff had a soy allergy. *See* Dkt. 72-2. It is true the DOC has a policy stating that a therapeutic diet will take precedence over a religious diet if a prisoner chooses to go on a therapeutic diet. *See* Dkt. 170-1, p. 7. However, Plaintiff has made no showing that he is required to be on any form of therapeutic diet or that he has a soy allergy prohibiting him from consuming the halal diet. Further, he has changed to non-halal diets in the past, and there is no prohibition on him choosing to stay on a non-halal diet and supplement it with halal foods bought from commissary. *See Combs v. Washington*, 660 Fed. App'x 515, 517 (9th Cir. 2016) (finding a prison policy that refused a "Shabbat sack" was not a substantial burden on religious exercise

1  because the prisoner could buy compliant food from the prison commissary). Thus, even if the

2  halal diet has more soy than other diets, Plaintiff has not been subjected to a substantial burden

3  because there is no evidence showing the prison policy precludes Plaintiff from adhering to his

4  faith in choice of food.

5        The undisputed facts do not show Plaintiff was forced to choose between an unhealthy

6  diet that comported with his faith or a healthy diet that did not. Because Plaintiff has not shown

7  Defendants placed a substantial burden on the exercise of his religion, he has not shown his

8  rights under RLUIPA were violated.

9        2.  First Amendment

10        Plaintiff also raises a claim that Defendants substantially burdened the practice of his

11  religion under the First Amendment. Like RLUIPA, under the First Amendment, plaintiff bears

12  the initial burden of establishing Defendants substantially burdened the practice of his religion

13  by preventing him from engaging in conduct mandated by his faith. *See Freeman v. Arpaio*, 125

14  F.3d 732, 736 (9th Cir. 1997) (overruled in part on other grounds by *Shakur v. Schriro*, 514 F.3d

15  878 (9th Cir. 2008)). To show that a First Amendment right to free exercise of religion has been

16  violated, a prisoner must demonstrate a burden to a sincerely held belief that is rooted in religion.

17  *Shakur*, 514 F.3d at 884. To "substantially burden" the practice of an individual's religions, the

18  interference must be more than an inconvenience, *Freeman*, 125 F.3d at 737, or an isolated

19  incident or short-term occurrence, *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998)

20  (short-term and sporadic intrusion upon a pre-trial detainee's prayers did not constitute a

21  substantial interference with detainee's religious practice). "[I]ncidental effects of government

22  programs, which may make it more difficult to practice certain religions but which have no

23  tendency to coerce individuals into acting contrary to their religious beliefs" are insufficient to

24

1    state a claim under the free exercise clause. *Lovelace v. Lee*, 471 F.3d 174, 194 (4th Cir. 2006).

2    *See also Camacho v. Shields*, 368 F. App'x 834, 835 (9th Cir. 2010) (interruption of inmate's

3    prayers on one occasion did not constitute a substantial burned on inmate's free exercise of

4    religion); *Uhuru v. Hart*, 2009 WL 3489376 at *12 (C.D. Cal. Oct. 27, 2009) (requiring prisoner

5    to remove his religious head covering on one occasion was not a substantial burden on his

6    religious practice).

7        If a substantial burden exists, the Court must then determine whether the regulation is

8    reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89. First,

9    the Court must consider whether there is a "valid, rational connection" between the prison

10   officials' actions and a legitimate government interest put forward to justify it. *Id*. "[I]f the prison

11   fails to show that the regulation is rationally related to a legitimate penological objective, we do

12   not consider [any] other facts." *Ashker v. Cal. Cep't of Corr.*, 350 F.3d 917, 922. However, if

13   there is a valid connection, the Court next considers whether there are "alternative means of

14   exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. Next, the court

15   considers what the impact will be on other prisoners and prison officials if the prisoner's

16   accommodation is administered. *Id*. Finally, the Court should examine whether the prison

17   officials have reasonable alternatives to the regulation. *Id*. "[T]he absence of ready alternatives is

18   evidence of the reasonableness of the prison regulation." *Id*.

19       Here, Plaintiff makes identical claims to his RLUIPA claims, arguing he is being forced

20   to choose between an unhealthy halal diet or a healthy diet that does not include certain halal

21   foods. Dkt. 165. Again, as above, Plaintiff has not shown the exercise of his religion was

22   substantially burdened. He has provided no evidence the halal diet is any more or less healthy

23   than any other diet and thus has failed to show that he is being forced to choose between his faith

24

1   and a healthy diet when he was required to choose a single diet plan. Further, as noted above,

2   there is no prohibition on Plaintiff choosing a different diet, and then supplementing his meals

3   with halal food from the commissary. *See Combs*, 660 Fed. App'x at 517. Though this may make

4   Plaintiff's religious exercise less convenient, inconvenience is not the same as a substantial

5   burden. *See Lovlace*, 471 F.3d at 194. Thus, Plaintiff has not shown Defendants subjected

6   Plaintiff to a substantial burden on the exercise of his religion by requiring him to choose only

7   one diet plan at a time.

8          Further, even if Plaintiff had shown Defendants knowingly placed a substantial burden on

9   his religious exercise, Defendants have shown the prison policy prohibiting the mixing of diet

10  plans is reasonably related to a legitimate penological interest. The Ninth Circuit has noted that

11  prisons have "a legitimate penological interest in running a simplified food service, rather than

12  one which gives rise to many administrative difficulties." *Ward v. Walsh*, 1 F.3d 873, 877 (9th

13  Cir. 1993) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). The regulation that

14  prohibits Plaintiff and other inmates from being on more than one diet plan at once has a valid,

15  rational connection to running such a simplified food service because it provides consistency in

16  the products, reliability in getting food to prisoners, additional jobs for prisoners, and reduces

17  overall cost. *See* Dkt. 232, p. 2 (noting the simplified system reduced costs by $1 million).

18  Plaintiff has alternative means to consuming halal food, including staying on the halal diet or

19  transferring to a different diet and supplementing his meals with halal food from the commissary.

20         In addition, as Defendants note, allowing Plaintiff to have a personalized diet plan would

21  mean that every other prisoner would also be entitled to such a diet plan, running contrary to the

22  "simplified" food service that the Ninth Circuit has recognized as a legitimate penological goal.

23  *See id.*, pp. 3-4. Thus, even if Plaintiff had shown Defendants' actions caused a substantial

24

REPORT AND RECOMMENDATION - 10

burden on his religious exercise, he has failed to show Defendants' actions were not reasonably related to a legitimate penological interest. *See Turner*, 482 U.S. at 89. Because Plaintiff has not shown Defendants imposed a substantial burden on the exercise of his religious beliefs and because their actions furthered a legitimate penological goal, Plaintiff has not shown his rights under the First Amendment were violated.

3.  Conclusion

Plaintiff has failed to show the exercise of his religion was substantially burdened by Defendants' requirement that he choose only one diet plan at a time. He has not shown that he is allergic to soy and thus precluded from consuming the halal diet, and, if he desires not to eat the halal diet, it is not a substantial burden to choose a different diet plan and supplement that diet with halal foods from the commissary. Therefore, the Court recommends Defendants' Motion be granted and Plaintiff's RLUIPA and First Amendment claims be dismissed.

*B.  Eighth Amendment Deliberate Indifference*

Plaintiff argues both that Defendants were deliberately indifferent to his conditions of confinement because they refused to allow Plaintiff to mix diet plans, and that Defendants acted with medical deliberate indifference to his soy and TVP allergy.

1.  Deliberate Indifference to Conditions of Confinement

Under the Eighth Amendment, prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.3d 1080, 1107 (9th Cir. 1986). To state a claim for unconstitutional conditions of confinement, a plaintiff must allege a defendant's acts or omissions deprived the inmate of "the minimal civilized measure of life's necessities" and the defendant acted with deliberate indifference to an excessive risk to inmate health or safety. *Allen v. Sakai,* 48 F.3d 1082,

1 | 1087 (9th Cir. 1994) (quoting *Farmer,* 511 U.S. at 834); *see Estate of Ford v. Ramirez—Palmer,*

2 | 301 F.3d 1043, 1049–50 (9th Cir. 2002).

3 |  "To violate the Cruel and Unusual Punishments Clause, a prison official must have a

4 | sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (internal quotations omitted). "In

5 | prison-conditions cases th[e] state of mind is one of 'deliberate indifference' to inmate health or

6 | safety[.]" *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991)). A prison official does not act

7 | with deliberate indifference "unless the official knows of and disregards an excessive risk to

8 | inmate health or safety." *Farmer,* 511 U.S. at 837. Further, it is only "'unnecessary and wanton

9 | infliction of pain' . . . [which] constitutes cruel and unusual punishment forbidden by the Eight

10 | amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing *Ingram v. Wright*, 430 U.S. 651,

11 | 670 (1977)). If a condition "is reasonably related to a legitimate governmental objective, it does

12 | not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

13 |  Plaintiff alleges Defendants were deliberately indifferent because he notified them that he

14 | wanted to mix diet plans, but they refused to customize his diet. Dkt. 165, p. 5. He argues

15 | specifically Defendant Williamson[2] stated he would not customize Plaintiff's diet because

16 | "[t]hen [he] would have to do it for everybody." *Id*., p. 6. He also argues Defendant Stewart was

17 | deliberately indifferent when she stated she would not change prison policy to accommodate

18 | Plaintiff's request for a mixed diet. *Id*. He finally generally alleges his Eighth Amendment

19 | protections were violated when he received rotten meat on several occasions, and specifically

20 | when he received a rotten hotdog on one occasions that was so toxic it allegedly caused Plaintiff

21 | to hallucinate. *Id*., pp. 21-22.

22 |

23 | ───────────────

24 |  [2] Defendant Williamson passed away during the course of these proceedings. Dkt. 202. He is now
represented in this case by his personal representative. Dkt. 229.

1   First, Plaintiff has not shown Defendants acted with deliberate indifference when they

2 allegedly provided rotten meat to Plaintiff. Aside from his bald allegations, Plaintiff has provided

3 nothing to show Defendants knew Plaintiff received rotten meat or that there was otherwise a

4 systemic issue with the meat provided in halal meals that Defendants ignored. Thus, Plaintiff has

5 not shown Defendants knew of, yet disregarded, an excessive risk to Plaintiff's health or safety.

6 *See Farmer*, 511 U.S. at 837. Further, because Plaintiff has not shown Defendants knowingly

7 provided Plaintiff with rotten meat, he has not demonstrated that the meat constitutes

8 unnecessary and wanton infliction of pain so as to violate the Eighth Amendment's prohibition

9 on cruel and unusual punishment. *Whitley*, 475 U.S. at 319. Even if Defendants negligently or

10 inadvertently provided rotten meat to Plaintiff, such negligence or inadvertent failure would at

11 most only amount to a tort claim, not a violation of the Constitution. *See Estelle*, 429 U.S. at

12 105-06.

13   Plaintiff has also not shown Defendants acted with deliberate indifference when they

14 declined to allow him a mixed diet plan. As noted in section III(A)(2) *supra*, the Ninth Circuit

15 has noted that prisons have "a legitimate penological interest in running a simplified food

16 service, rather than one which gives rise to many administrative difficulties." *Ward*, 1 F.3d at

17 877. Here, Defendants have demonstrated that the purpose of the standardized diet plans is to

18 provide consistency, reliability, additional jobs for prisoners, and cost reduction for prisoners'

19 meals. *See* Dkt. 232. Thus, following the prison's policy and only allowing Plaintiff to be on one

20 diet plan at once, not allowing him to mix diet plans, is "reasonably related to a legitimate

21 governmental objective." *Wolfish*, 441 U.S at 539. Plaintiff has provided nothing more to show

22 Defendants denied him a mixed diet plan for any improper purpose. Because Plaintiff has not

23

24

shown they knew of, yet ignored, an excessive risk to Plaintiff's health or safety, he has not

shown Defendants acted with deliberate indifference regarding his conditions of confinement.

2.  Deliberate Indifference to Serious Medical Need

"[D]eliberate indifference to serious medical needs of prisoners constitutes the

unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal

citation omitted); *see also Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment

medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the

nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th

Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th

Cir.1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in

further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of a

medical condition that significantly affects an individual's daily activities; or the existence of

chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the

prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834.

Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure

to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant

must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A

prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious

1  medical needs "unless the official knows of and disregards an excessive risk to inmate health or

2  safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the

3  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

4  inference." *Id.*

5      Plaintiff alleges he has an allergy to soy and TVP, both products that are found in many

6  DOC meals. Dkt. 165. He alleges the soy and TVP give him bloating, gas, and intense

7  gastrointestinal pain. *Id.* at pp. 11-15. He alleges the halal diet is largely TVP based, meaning he

8  cannot maintain his religious diet without also being in constant pain. *Id.* He states he requested

9  medical intervention, asking Defendants to provide him with an alternative diet that contained

10 less soy and TVP, but that he was unlawfully denied. *Id.* He also alleges he has an x-ray of his

11 bowels, showing the extreme nature of the bloating, but has not provided a copy of that x-ray to

12 the Court. *Id.* at p. 13. He also specifically alleges Defendant Williamson told Plaintiff he would

13 not be placed on a special diet and suggested that, if Plaintiff wanted to avoid TVP, to "self-

14 restrict" his eating habits. *Id.*, p. 17.

15     He finally alleges he told multiple Defendants about the allergy, but that Defendants told

16 him to address the concern through medical. *Id.*, p. 19. However, he alleges when he spoke with

17 medical, they told him to return to food services, and so Defendants placed him in a perpetual

18 loop where he would never receive the assistance he needed. *Id.*

19     Here, Plaintiff has failed to support his allegations that Defendants ignored his serious

20 medical need. Plaintiff did request an allergy assessment. Dkt. 72-2. However, the Care Review

21 Committee analyzed Plaintiff's symptoms and notes from Plaintiff's provider, ultimately

22 determining it was not medically necessary based on the evidence before it. *Id.* Plaintiff's

23 provider noted his blood work was normal, and there was no evidence of anemia, low protein, or

24

1   albumin. *Id.* The provider also made no notes of hives, rashes, anaphylaxis, malnutrition, or any

2   other indication of a food related allergy. *Id.* Thus, the undisputed facts reflect there was no

3   medical indication that Plaintiff is allergic to soy or TVP. *Id.* The only notice Defendants

4   received was a report of gastrointestinal distress from Plaintiff and attributed by Plaintiff to a soy

5   allergy, with no other medical findings that supported that self-diagnosis.

6       Plaintiff has not otherwise shown that he has a soy or TVP allergy that Defendants

7   ignored because he has provided no evidence other than his own allegations to support his

8   assertion. Conclusory allegations without support are not sufficient to survive summary

9   judgment. *See Lujan*, 497 U.S. at 888. Because Plaintiff has not shown he has a soy or TVP

10  allergy and that Defendants knew of, yet ignored, the allergy, Plaintiff has failed to show

11  Defendants acted with deliberate indifference to a serious medical need when they did not allow

12  him to mix diet plans.

13      3.   <u>Conclusion</u>

14      Plaintiff has not shown Defendants acted with deliberate indifference when they declined

15  to allow him to mix diet plans, nor has he shown he has an allergy Defendants knew of, yet

16  ignored. Because Plaintiff has failed to show Defendants acted with deliberate indifference, he

17  has not shown that Defendants' actions violated his Eight Amendment protections. Therefore,

18  the Court recommends Defendants' Motion be granted and Plaintiff's deliberate indifference

19  claims be dismissed.

20      *C.   Fourteenth Amendment*

21      Plaintiff argues his Fourteenth Amendment due process rights were violated because he

22  did not receive a hearing before being denied a soy or TVP free diet. Dkt. 165. He also argues his

23  equal protection rights were violated because he, as a Muslim on a halal diet and allegedly

24

1  allergic to soy and TVP, suffers disproportionately to Christian, Native, and Asatru prisoners

2  because his religious diet has higher levels of soy than their religious diets.

3      1.  <u>Due Process</u>

4      In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that state law creates

5  liberty interests deserving protection under the Fourteenth Amendment's Due Process Clause

6  only when the deprivation in question: (1) restrains the inmate's freedom in a manner not

7  expected from his or her sentence; and (2) "imposes atypical and significant hardship on the

8  inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84; *see also Myron v.*

9  *Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.

10  2003); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d

11  850, 860 (9th Cir. 2003); *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997); *Mujahid v.*

12  *Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (per curiam).  "There is no single standard for

13  determining whether a prison hardship is atypical and significant, and the 'condition or

14  combination of conditions or factors [of the alleged hardship] . . . requires case by case, fact by

15  fact consideration.'"  *Ramirez,* 334 F.3d at 861 (*quoting Keenan v. Hall*, 83 F.3d 1083, 1089 (9th

16  Cir. 1996)).

17      Plaintiff alleges his due process rights were violated because Defendants "held no

18  hearing" before determining he would not be transferred to a soy or TVP free diet and because,

19  even if a hearing had been held, forcing Plaintiff to stay on the allegedly unhealthy diet

20  containing soy and TVP is a violation of substantive due process. Dkt. 165, p. 13. However, the

21  record shows, though Plaintiff was not allowed a soy-free diet because he was not diagnosed

22  with a soy allergy, Dkt. 71, he had the opportunity, and has used that opportunity, to change diet

23  plans to something more to his liking, Dkts. 233, 233-1. Further, he has provided no evidence

24

other than his own allegations that he has a soy or TVP allergy, indicating Defendants

maintaining him on such a diet would not be detrimental to his health and so would not be a

violation of substantive due process. Further, there is nothing to indicate that requiring a prisoner

to choose between several options for their diet plan represents an atypical or significant

hardship. Finally, Plaintiff has submitted nothing to indicate Defendants required Plaintiff to

choose a diet plan in order to punish him. Because Plaintiff has not demonstrated Defendants

imposed an atypical and significant hardship on him when they required him to choose a single

meal plan and did not allow him to have a soy-free diet plan, Plaintiff has not shown his due

process rights were violated.

   2.  Equal Protection

   The Fourteenth Amendment's equal protection clause "is essentially a direction that all

persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*,

473 U.S. 432, 439 (1985).  "To prevail on an Equal Protection claim brought under § 1983,

Plaintiffs must allege facts plausibly showing that 'the defendants acted with an intent or purpose

to discriminate against [them] based upon membership in a protected class.'" *Hartmann v.*

*California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013)

(quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)). Thus, Plaintiff

must show: (1) he is a member of a protected class; and (2) he is being intentionally treated

differently from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976);

*Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963). For equal protection purposes, a "protected

class" is a group "comprised of similarly situated persons so that the factor motivating the

alleged discrimination can be identified." *Thornton*, 425 F.3d at 1167 (citing *Freeman v. City of*

*Santa Ana*, 68 F.3dc 1180, 1187 (9th Cir. 1995). Further, though a plaintiff may plead that he is a

1    "class of one," he "still bears the burden of proving that [he] 'has been intentionally treated

2    differently from others similarly situated and that there is no rational basis for the difference in

3    treatment.'" *Thornton*, 425 F.3d at 1167 (citing *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309

4    F.3d 661, 679 (9th Cir. 2002)).

5        Plaintiff seems to allege a violation of equal protection because he, as Muslim on a halal

6    diet, is being fed more soy and TVP than Christian, Native, and Asatru prisoners on their own

7    religious diets. Dkt. 165, pp. 7-8. He also argues he was denied equal protection when he was not

8    provided milk while on a vegan diet. *Id*., pp 25-26. However, Plaintiff has failed to show, even if

9    he is part a protected class, that Defendants intentionally discriminated against him because of

10   his religion. He was denied milk not because he was Muslim, but because he had voluntarily

11   entered a vegan diet plan that, by its nature, does not provide animal products. *See* Dkt. 147-1.

12   Further, he has provided no evidence to indicate that Christian, Native, or Asatru prisoners have

13   specific, lower soy diets. Rather, his claim is limited to the allegation he is being provided soy

14   and TVP in inappropriate quantities where as others of different faiths are receiving less soy and

15   TVP. However, all voluntary diet plans are open to all prisoners, even religious diets. Plaintiff

16   does not explain how his choice to remain on the halal diet plan, rather than a different diet plan

17   available to all prisoners regardless of faith, constitutes an equal protection violation. Because

18   Plaintiff has failed to show Defendants treating others similarly situated with preferential

19   treatment, Plaintiff has not shown his equal protection rights were violated.

20       3.   Conclusion

21       Plaintiff has not shown that he was subjected to an atypical and significant hardship, nor

22   that he is in a protected class treated differently than other similarly situated classes. Thus,

23   Plaintiff has failed to show his Fourteenth Amendment due process or equal protection rights

24

1  were violated. Therefore, the Court recommends Defendants' Motion be granted and all

2  Plaintiff's Fourteenth Amendment claims be dismissed.

3      *D. Retaliation*

4      Plaintiff also alleges two Defendants retaliated against him for his halal diet and other

5  religious beliefs. To prevail on a retaliation claim, a plaintiff must allege and prove the defendants

6  retaliated against him for exercising a constitutional right and the retaliatory action did not advance

7  legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*,

8  108 F.3d 265, 267 (9th Cir. 1997).

9          Within the prison context, a viable claim of First Amendment retaliation entails five
           basic elements: (1) An assertion that a state actor took some adverse action against
10         an inmate (2) because of (3) that prisoner's protected conduct, and that such action
           (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did
11         not reasonably advance a legitimate correctional goal.

12  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants

13  acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

14  Further, though the timing of an action can considered as circumstantial evidence of retaliatory

15  intent, mere timing is not enough in itself to establish such retaliatory intent. *Pratt v. Rowlandi¸*65

16  F.3d 802, 808 (9th Cir. 1995).

17      Plaintiff alleges Defendant Roberts retaliated against him by making him throw away

18  food he received from another prisoner. Dkt. 165, pp. 27-28. He argues when he tried to explain

19  to Defendant Roberts that the trading of food was "authorized by Islamic law," Defendant

20  Roberts ordered him to throw away the traded food or be sent to segregation. *Id*. Defendant

21  Roberts subsequently filed an infraction against Plaintiff. *Id*. Plaintiff also alleges in passing that

22  Defendant Williamson retaliated against him because he complained about other inmates

23  receiving outside food. *See* Dkt. 165, p. 28.

24

1       Here, Plaintiff has provided no evidence of retaliation. Even if Plaintiff can successfully

2  show Defendant Roberts' command to throw away the traded food and subsequent infractions

3  constitute adverse action, Plaintiff cannot show Defendant Roberts' actions were motivated by

4  Plaintiff's act of trading food "authorized by Islamic law." Rather, under DOC policy, prisoners

5  who are on a religious diet and are "observed eating mainline instead of their religious diet meals

6  will be infracted." Dkt. 70-1, p. 7. Plaintiff has provided nothing except his own bare assertions

7  suggesting Defendant Roberts' actions were anything more than adherence to this DOC policy.

8  Indeed, as to Defendant Williamson, Plaintiff has provided nothing beyond a passing statement

9  that Defendant Williamson retaliated against him for complaining about food received by other

10  prisoners. *See* Dkt. 165, p. 10. The lack of evidence Plaintiff has provided is an insufficient

11  prima facie showing of retaliation.

12       Further, Plaintiff has not shown that Defendant Roberts' actions were not in furtherance

13  of a legitimate penological goal. Defendants have submitted evidence, showing the purpose of

14  having a centralized food system was, in part, to control quality and size of meals. Dkt. 232.

15  They have also submitted evidence showing that another purpose of the centralized food system

16  is to ensure "nutritional targets are being met . . . ." *Id.*, p. 3. Enforcing this policy through

17  infractions allows Defendants to ensure prisoners receive an appropriate amount of food and

18  ensuring that food is nutritionally adequate. This constitutes a legitimate penological interest.

19  Thus, Plaintiff has failed to provide evidence beyond his own speculation that Defendants

20  Roberts or Williamson retaliated against him. Therefore, the Court recommends Defendants'

21  Motion be granted and Plaintiff's retaliation claims be dismissed.

22

23

24

1    *E.  Washington State Constitutional Claims*

2    Plaintiff also includes several allegations stating claims directly under the Washington

3    State Constitution. However, "Washington courts have consistently rejected invitations to

4    establish a cause of action for damages based upon constitutional violations 'without the aid of

5    augmentative legislation[.]" *Blinka v. Washington State Bar Ass'n*, 109 Wash. App. 575, 591

6    (Div. I 2001) (quoting *Sys. Amusement Inc. v. State*, 7 Wash. App. 516, 516 (1972)). Plaintiff has

7    not explained which Washington State constitutional provision he seeks relief under and, even

8    read liberally, he has not demonstrated that he can bring a private cause of action because he has

9    not shown that "augmentative legislation" allows him to bring suit under the Washington State

10    Constitution here. Thus, Plaintiff has not raised an appropriate claim under the Washington State

11    Constitution. Therefore, the Court recommends granting Defendants' Motion to dismiss

12    Plaintiff's Washington State Constitution claims.

13    *F.  Washington State Tort Claims*

14    Plaintiff also includes a Washington State tort negligence claim in his Complaint. Under

15    Washington law, to recover under negligence, a plaintiff must demonstrate four things: (1) the

16    existence of a duty to plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) the breach

17    was the proximate cause of the injury. *Wuthrich v. King County*, 185 Wash. 2d 19, 25 (2016);

18    *Lowman v. Wilbur*, 178 Wash. 2d 165, 169 (2013); *Crowe v. Gaston*, 134 Wash. 2d 509, 514

19    (1998). The threshold determination is whether a duty is owed to the plaintiff. *Taylor v. Stevens*

20    *C'nty*, 111 Wash. 2d 159, 163 (1988). If a duty is owed, the Court must then ascertain the nature

21    of the duty by establishing the "standard of care." *Keller v. City of Spokane*¸146 Wash. 2d 237,

22    243 (2002).

23

24

1     "Washington courts have long recognized a jailer's special relationship with inmates,

2   particularly the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 170

3   Wash. 2d 628, 625 (2010). A jail, and by extension its staff, also have a duty "to protect an

4   inmate from injury by third parties and jail employees." *Id*. at 645 (Madsen, C.J.,

5   concurring/dissenting). Though *Gregoire v. City of Oak Harbor* discussed a prisoner in a county

6   jail, the Washington Court of Appeals has noted that "[i]t is undisputed the Department [of

7   Corrections] owes a duty to ensure the health, welfare, and safety of incarcerated individuals."

8   *Hopovac v. State Department of Corrections*, 197 Wash. App. 817, 823 (Div. III 2017) (citing

9   *Gregoire*, 170 Wash. 2d 43).

10     Here, Plaintiff first asserts Defendants acted negligently when they failed to provide him

11   with treatment for his soy and TVP allergy. However, as noted in section III(B)(2) *supra*,

12   Plaintiff has provided no evidence aside from his own assertions that he suffers from a soy or

13   TVP allergy. Thus, Defendants could not have been negligent in failing to treat an undiagnosed

14   illness, and he has not shown how they were otherwise negligent in providing him with food that

15   contained soy and TVP. Plaintiff also alleges Defendants were negligent for providing him with

16   rotten meat. However, again, as noted in section III(B)(1) *supra*, Plaintiff has provided no

17   evidence Defendants knew about the rotten meat and yet failed to remedy it. He has provided

18   nothing to show Defendants had some sort of other systemic issue that led to the issuance of

19   rotten meat and he has further failed to show how any of Defendants actually participated in the

20   alleged negligence besides their nature as staff at the prison. Further, Defendants have provided

21   evidence that if unsafe food is served to Plaintiff, he may request and will receive a new food

22   tray. Dkt. 112, p. 2. Thus, Plaintiff has failed to show Defendants breached any duty they had to

23   Plaintiff and failed to show that any alleged breach of duty was the proximate cause of Plaintiff's

24

1  injury. Therefore, the Court recommends Defendants' Motion be granted and Plaintiff's

2  Washington State tort claims.

3      *G. Personal Participation and Qualified Immunity*

4      Defendants argue they are all entitled to qualified immunity and that Plaintiff has failed

5  to allege the personal participation of several Defendants. However, the Court has already

6  analyzed Plaintiff's claims on their merits and found that all of them should be dismissed.

7  Therefore, the Court declines to make a determination as to qualified immunity or personal

8  participation at this time.

9                    **CONCLUSION**

10     Based on the foregoing, the Court concludes none of Plaintiff's allegations or claims have

11 merit based on the record before the Court. Accordingly, the Court recommends Defendants'

12 Motion (Dkt. 231) be granted and Plaintiff's action be dismissed with prejudice as to all claims.

13     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

15 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

16 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

17 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

18 October 12, 2018, as noted in the caption.

19

20     Dated this 24th day of September, 2018.

21

22                    _____
                       David W. Christel
23                     United States Magistrate Judge

24